1

2

3

4

5

6

7

8

HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

9

10

11

12

13

14

15

MANSUR PROPERTIES LLC, an Oregon
limited liability company,

              Plaintiff,

    v.

FIRST AMERICAN TITLE INSURANCE
COMPANY, a California corporation,

              Defendant.

NO. 3:21-cv-05491-RJB

FIRST AMERICAN TITLE
INSURANCE COMPANY'S MOTION
FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
October 1, 2021

16

## I.   <u>INTRODUCTION</u>

17

18

19

20

21

22

23

24

25

26

     Plaintiff Mansur Properties, LLC ("Mansur") claims that Defendant First American Title Insurance Company ("First American") was negligent in its review of the chain of title for its property.  Specifically, it argues that First American "breached a duty to Plaintiff" by not providing an accurate legal description of the property in the title insurance policy it issued. After First American issued Mansur the policy and Mansur purchased the property, Mansur discovered that a portion of the property described in the policy was previously conveyed to its neighbor.  Mansur then tendered a claim to First American.  First American accepted the claim and hired an attorney to represent Mansur and attempt to resolve the issue regarding the legal description.  However, Mansur was not satisfied with First American's handling of the claim and sued.

27

FIRST AMERICAN TITLE INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT
No. 3:21-cv-05491-RJB

1

Socius Law Group, PLLC
A T T O R N E Y S
One Union Square • 600 University St., Suite 2510
Seattle, Washington 98101
Telephone 206.838.9100
Facsimile 206.838.9101

Mansur misunderstands the role of a title insurer versus that of an abstractor of title. Washington law is clear that title insurers do not possess a general duty to search for and disclose potential title defects.  Rather than guaranteeing clear title, a title insurance policy is a contract of indemnity against defects in title.  The title insurer agrees to hold harmless or reimburse the insured for any loss due to the specific causes insured against.  Because First American did not owe Mansur the duty it claims, the Court should grant First American's motion, hold that it was not negligent, and dismiss the complaint with prejudice.

## II.  STATEMENT OF FACTS

On September 22, 2020, First American issued Mansur an "ALTA Commitment for Title Insurance" (the "Commitment"), offering to issue it a title insurance policy for the real property located at 8312 E. Mill Plain Boulevard, Vancouver, WA 98664 (the "Property").[1] (Declaration of Thomas F. Peterson ("Peterson Decl."), ¶ 2, Ex. A.)  First American offered to issue the policy "[s]ubject to the Notice; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and the Commitment Conditions."  (*Id.* ¶ 2, Ex. A at 8.)  The "Notice" provides that the Commitment is not an abstract of title, report of the condition of title, legal opinion, opinion of title, or other representation of the status of title.  (*Id.*)

Pursuant to the Commitment, First American then issued Mansur an "Owner's Policy of Title Insurance" under policy number 5011453-3497419 (the "Policy").  (*Id.* ¶ 3, Ex. B.)  In exchange for a premium, and subject to certain exclusions and exceptions, First American agreed to insure Mansur against loss or damage, not exceeding $490,000, sustained or incurred due to (1) "Title being vested other than as stated in Schedule A,"[2] (2) "Any defect in or lien or encumbrance on Title," (3) "Unmarketable Title," and (4) "No right of access to and from land."  (*Id.* ¶ 3, Ex. B at 1.)

On January 22, 2021, First American received a notice of claim letter from Mansur, notifying it that Mansur was making a claim under the Policy due to an alleged flaw in the

---

[1] Exhibit A to the Commitment includes a legal description of the Property.  (Peterson Decl., ¶ 2, Ex. A at 11.)
[2] *Schedule A of the Policy includes a legal description of the Property.  (Id.* ¶ 3, Ex. B at 6.)

FIRST AMERICAN TITLE INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT
No. 3:21-cv-05491-RJB

2

**Socius Law Group**, PLLC
**A T T O R N E Y S**
One Union Square • 600 University St., Suite 2510
Seattle, Washington 98101
Telephone 206.838.9100
Facsimile 206.838.9101

1  Policy's legal description of the Property (the "Claim").  (*Id.* ¶ 4, Ex. C.)  Specifically, Mansur

2  alleged that First American engaged in a "flawed search in its review of the chain of title for

3  The Property."  (*Id.*)  Mansur discovered a 1965 warranty deed transferring a rectangular

4  portion of the Property to its easterly neighbor, thereby creating an overlap in the legal

5  descriptions for its own deed and its neighbor's deed.  (*Id.*)  Mansur offered to accept $105,000

6  in settlement for the Claim.  (*Id.*)  In doing so, it cited an attached appraisal letter estimating

7  the resulting loss in value to the Property at $89,840.  (*Id.*)

8       In response, First American accepted coverage of the Claim under "Covered Risk 1."

9  (*Id.* ¶ 5, Ex. D at 2.)  Covered Risk 1 "provides coverage against loss or damage, sustained, or

10  incurred by the Insured by reason of Title being vested other than as stated in Schedule A."

11  (*Id.*)  As to Mansur's offer to settle the Claim for $105,000, First American explained,

12      When the Company learns of a claim that is covered, Conditions 5 and 7 of the
    Policy provide that the Company has various choices under the Policy and *may*

13      *choose one or more of those options*.  The Company has elected to exercise its
    option to retain counsel to represent you in negotiating with the neighbor to

14      resolve the potential overlap created by the various deeds.

15  (*Id.*)  First American then provided Mansur with contact information for the attorney it had

16  retained to represent Mansur.  (*Id.*)

17       Instead of abiding by the Policy and giving First American the opportunity to negotiate

18  with its neighbor to resolve the Claim, Mansur filed this action for negligence.  (*Id.* ¶ 6, Ex.

19  E.)  It alleges that First American "was negligent in their review of the chain of title for the

20  Property" and "breached a duty to Plaintiff's in providing an accurate legal description of the

21  Property before it was purchased and when the statutory warranty deed was filed."  (*Id.* ¶ 6,

22  Ex. E at 3.)  However, Washington law is clear that title insurers do not owe their insureds a

23  duty to search for and disclose potential title defects.

24  ### III. <u>STATEMENT OF ISSUES</u>

25       Whether the Court should hold that First American was not negligent and dismiss the

26  complaint with prejudice because it did not owe Mansur a duty to search for and disclose

27  potential title defects.

FIRST AMERICAN TITLE INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT
No. 3:21-cv-05491-RJB

3

Socius Law Group, PLLC
**A T T O R N E Y S**
One Union Square • 600 University St., Suite 2510
Seattle, Washington 98101
Telephone 206.838.9100
Facsimile 206.838.9101

## IV. **EVIDENCE RELIED UPON**

This motion is based on the pleadings and files herein and on the Declaration of Thomas F. Peterson.

## V. **AUTHORITY**

To establish its negligence claim, Mansur must prove that First American owed it a duty to provide an accurate legal description of the Property by searching for and disclosing potential title defects. *See Iwai v. State*, 129 Wn.2d 84, 96, 915 P.2d 1089 (1996). However, it is well-settled law in Washington that title insurance companies possess no general duty to search for and disclose such defects when issuing preliminary commitments for title insurance. *Barstad v. Stewart Title Guar. Co., Inc.*, 145 Wn.2d 528, 534-36, 39 P.3d 984 (2002).

### A. First American's Duties Under Chapter 48.29 RCW

Chapter 48.29 RCW sets forth the general duties of title insurers. A "preliminary report" or "commitment" furnished in connection with an application for title insurance is an offer to

> issue a title policy subject to the stated exceptions in the report[ ], the conditions and stipulations of the report and the issued policy, and other matters as may be incorporated by reference. The reports are not abstracts of title, nor are any of the rights, duties, or responsibilities applicable to the preparation and issuance of an abstract of title applicable to the issuance of any report. *The report is not a representation as to the condition of the title to real property, but is a statement of terms and conditions upon which the issuer is willing to issue its title policy, if the offer is accepted.*

RCW 48.29.010(3)(f) (emphasis added). A "title policy" is "any written instrument, contract, or guarantee by means of which title insurance liability is assumed." RCW 48.20.010(3)(j).

In contrast, an "abstract of title" means

> a written representation, provided under contract, whether written or oral, intended to be relied upon by the person who has contracted for the receipt of this representation, listing all recorded conveyances, instruments, or documents that, under the laws of the state of Washington, impart constructive notice with respect to the chain of title to the real property described.

RCW 48.29.010(3)(a). The definition of "abstract of title" expressly provides that "[a]n abstract of title is *not* a title policy as defined in this subsection." *Id.* (emphasis added).

FIRST AMERICAN TITLE INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT
No. 3:21-cv-05491-RJB

4

Socius Law Group, PLLC
**A T T O R N E Y S**
One Union Square • 600 University St., Suite 2510
Seattle, Washington 98101
Telephone 206.838.9100
Facsimile 206.838.9101

In *Barstad*, a group of insureds brought claims against a group of title insurance companies for negligent misrepresentation, arguing that the companies should have made certain disclosures in their preliminary commitments for title insurance.  145 Wn.2d at 530. The insureds specifically claimed that the companies "should have disclosed that the parcels of land securing the loans had not been divided from larger tracts, that a senior lien existed on two of the lots, and that loan proceeds were being used to satisfy the senior lien."  *Id.*  Applying the definitions in RCW 48.29.010, the court explained that preliminary commitments and abstracts of title serve different purposes.  *Id.* at 536.  Preliminary commitments merely "offer to issue the title insurance subject to the stated conditions."  *Id.*  On the other hand, abstracts of title list "all recorded conveyances, instruments, or documents that impact the [real property's] chain of title," imparting constructive notice with respect to the chain of title.  *Id.* The court therefore held that "insurance companies have no general duty to disclose potential or known title defects in preliminary title commitments."  *Id.* at 530, 536.

**B.    The Commitment and Policy Are Not Abstracts of Title**

Here, First American issued Mansur the Commitment before issuing it the Policy. Consistent with the definition of "preliminary commitment" in RCW 48.29.010(3)(f), the Commitment states that it is an offer to issue the Policy subject to "the Notice; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and the Commitment Conditions." (Peterson Decl., ¶ 2, Ex. A at 8.)  The "Notice" in the Commitment is explicit that

> THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE.   THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INLCUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

(*Id.*)

First American then issued Mansur the Policy.  (*Id.* ¶ 3, Ex. B.)  Consistent with the definition of "title policy" in RCW 48.20.010(3)(j), the Policy is the written instrument by

FIRST AMERICAN TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT
No. 3:21-cv-05491-RJB

5

Socius Law Group, PLLC
A T T O R N E Y S
One Union Square • 600 University St., Suite 2510
Seattle, Washington 98101
Telephone 206.838.9100
Facsimile 206.838.9101

which First American assumed title insurance liability.  The Policy is *not* an abstract of title. *See* RCW 48.29.010(3)(a).  It does not list all recorded conveyances, instruments, or documents that impact the Property's chain of title.  (*See* Peterson Decl., ¶ 3, Ex. B.)

**C.     The Rights and Duties of the Parties Are Governed by the Policy, with which First American Complied**

Where a court applying Washington law is called upon to distinguish between claims where a plaintiff is limited to contract remedies, and cases where recovery in tort may be available, the court must apply the "independent duty doctrine." *Affiliated FM Ins. Co. v. LTK Consulting Services, Inc.*, 170 Wn.2d 442, 449, 243 P.3d 521 (2010).  Under the independent duty doctrine, "[a]n injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." *Eastwood v. Horse Harbor Foundation, Inc.*, 170 Wn.2d 380, 389, 241 P.3d 1256 (2010).  As established above, First American owes no independent duty in tort to Mansur to search for and disclose potential title defects.  The rights and duties of the parties are therefore governed solely by the terms of the contract—in this case, the Policy—not general negligence principles.

In *Securities Service, Inc. v. Transamerica Title Ins. Co.*, 20 Wn. App. 664, 583 P.2d 1217 (1978), the court helpfully distinguished between (1) contracts that guarantee or insure a clear title and (2) contracts that indemnify against defects in or unmarketability of title.  In the title policy at issue, Transamerica did not agree to "clear" or "guarantee" title for the insured. *Id.* at 669.  Rather, in consideration for a fixed single premium, Transamerica agreed that it would insure "'against loss or damage sustained by reason of: . . . (2) Any defect in, or lien or encumbrance on, said title.'"  *Id.*  The court explained:

> In essence then, Transamerica agreed to indemnify, i.e., hold harmless or reimburse Securities for any loss due to the causes insured against in an amount not exceeding the policy limits of $27,000.  Title policies of the kind issued by Transamerica in this case do not guarantee or insure a clear title or that there will be no losses.

*Id.*  The court continued,

> The contract is one of indemnity against defects in or unmarketability of title, or liens, or encumbrances.  The risks of title insurance, although they may be

FIRST AMERICAN TITLE INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT
No. 3:21-cv-05491-RJB

6

Socius Law Group, PLLC
**A T T O R N E Y S**
One Union Square • 600 University St., Suite 2510
Seattle, Washington 98101
Telephone 206.838.9100
Facsimile 206.838.9101

referable to the contingency of future loss, are only designed to save the insured harmless from loss through defects in or unmarketability of title, or liens, or encumbrances, that may affect or burden his title when he takes it.

*Id.*

Like *Securities Service*, the Policy here is a contract of indemnity.  In exchange for a premium, First American agreed to insure Mansur against

loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of: . . . 1. Title being vested other than as stated in Schedule A. . . .  2. Any defect in or lien or encumbrance on the Title. . . . 3. Unmarketable Title. . . . 4. No right of access to and from the Land.

(Peterson Decl., ¶ 3, Ex. B at 1.)  Nowhere in the Policy did First American agree to "clear" or "guarantee" title for Mansur.  (*See id.* ¶ 3, Ex. B.)  Accordingly, First American did not owe a contractual duty to Mansur to review the chain of title for the Property and provide it with an accurate legal description.

In the event of a claim under the Policy, Condition 5 gives First American the right "to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured." (*Id.* ¶ 3, Ex. B at 3-4.)  In addition, or in the alternative, Condition 7 gives First American the options of (1) paying or tendering payment of the amount of insurance or (2) paying or otherwise settling with parties other than the insured or with the insured claimant.  (*Id.* ¶ 3, Ex. B at 4.)  After Mansur notified First American of the Claim and requested it pay $105,000 to settle the Claim, First American accepted coverage under Covered Risk 1.  (*Id.* ¶ 5, Ex. D at 2.)  Covered Risk 1 provides coverage against loss or damages sustained or incurred by Mansur by reason of "Title being vested other than as stated in Schedule A." (*Id.*)  First American explained to Mansur that instead of paying the requested $105,000, Conditions 5 and 7 of the Policy provide it with several options to resolve the Claim.  (*Id.*)  It then exercised its option under the Policy "to retain counsel to represent [Mansur] in negotiating with the neighbor to resolve the potential overlap created by the various deeds." (*Id.*)

FIRST AMERICAN TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT
No. 3:21-cv-05491-RJB

7

**Socius Law Group**, PLLC
**A T T O R N E Y S**
One Union Square • 600 University St., Suite 2510
Seattle, Washington 98101
Telephone 206.838.9100
Facsimile 206.838.9101

1  Rather than abide by the Policy and allow First American the opportunity to negotiate

2  with its neighbor, Mansur instituted this action for negligence. (*Id.* ¶ 6, Ex. E.)  It did so despite

3  well-established law, and notice in the Commitment, that First American is not an abstractor

4  of title and owes no duty to Mansur to search for and disclose potential title defects.  As a

5  result, the Court should hold that First American was not negligent and dismiss the complaint

6  with prejudice.

7  ## VI. <u>CONCLUSION</u>

8  Washington law is clear that title insurers do not owe their insureds a duty to search for

9  and disclose potential title defects.  The Commitment First American issued to Mansur

10  indicates the same, providing that it is not an abstract of title, report of the condition of title,

11  legal opinion, opinion of title, or other representation of the status of title.  Rather than a

12  guarantee of clear title, the Policy at issue is a contract of indemnity by which First American

13  agreed to hold Mansur harmless or reimburse it for losses due to the covered risks insured

14  against.  First American complied with the Policy by retaining counsel to represent Mansur in

15  negotiating with its neighbor to resolve the Claim.  Accordingly, First American respectfully

16  requests that the Court grant its motion, hold that it was not negligent, and dismiss the

17  complaint with prejudice.

18  DATED this 7th day of September, 2021.

19  SOCIUS LAW GROUP, PLLC

21  *s/Thomas F. Peterson*
Thomas F. Peterson, WSBA #16587

22  Courtney Olson, WSBA #54548
tpeterson@sociuslaw.com

23  colson@sociuslaw.com

24  Attorneys for First American Title Insurance
Company

FIRST AMERICAN TITLE INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT
No. 3:21-cv-05491-RJB

8

Socius Law Group, PLLC
A T T O R N E Y S
One Union Square • 600 University St., Suite 2510
Seattle, Washington 98101
Telephone 206.838.9100
Facsimile 206.838.9101