UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MANSUR PROPERTIES LLC, | CASE NO. C21-05491-LK |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | |
| Defendant. | |

This matter comes before the Court on First American Title Insurance Company's motion for summary judgment. Dkt. No. 34. The Court held oral argument on the motion on October 17, 2022. Dkt. No. 40. For the reasons set forth below, the Court grants the motion.

## I.    BACKGROUND

This insurance dispute arises out of Plaintiff Mansur Properties LLC's purchase of a parcel of land in Vancouver, Washington in 2020 for the purpose of turning it into a used car lot. Dkt. No. 26 at 2. Mansur obtained an insurance policy from First American and claims that under the policy, First American is liable for the losses Mansur incurred as a result of its discovery that it

might not own the entire parcel of land it thought it had purchased. *Id.*; Dkt. No. 37-1 at 1. Specifically, Mansur discovered that a third party may own a section that consists of parking spaces in the back of Mansur's property—spaces that Mansur contends are critical to its ability to park inventory for its used car business, rendering the diminished property unusable for its intended purpose. Dkt. No. 26 at 3; Dkt. No. 37-1 at 1–2. First American paid the claim, but Mansur alleges that it engaged in unreasonable delay in the process and ultimately underpaid the claim. Dkt. No. 26 at 3.

**A.      The Insurance Policy**

First American issued Mansur an "ALTA Commitment for Title Insurance" (the "Commitment") in 2020, offering to issue a title insurance policy for the real property located at 8312 E. Mill Plain Boulevard, Vancouver, WA 98664 (the "Property"). Dkt. No. 35 at 1, 5–15. It offered to issue the policy "[s]ubject to the Notice[,]" which in turn provides that the Commitment "is not an abstract of title, report of the condition of title, legal opinion, opinion of title, or other representation of the status of title." *Id.* at 12.

Pursuant to the Commitment, First American issued Mansur an "Owner's Policy of Title Insurance" (the "Policy"). *Id.* at 17–25. Subject to certain exclusions and exceptions, First American agreed to insure Mansur against loss or damage up to $490,000 incurred due to, among other things, (1) "[t]itle being vested other than as stated in Schedule A," or (2) "[a]ny defect in or lien or encumbrance on the Title." *Id.* at 17. Schedule A includes a legal description of the Property boundaries. *Id.* at 22–23.

**B.      Mansur's Insurance Claim**

In January 2021, Mansur provided notice to First American that it was making a claim under the Policy due to First American's alleged "flawed search in its review of the chain of title for The Property." *Id.* at 27. Mansur explained that it had discovered a 1965 statutory warranty

deed transferring a rectangular portion of the Property to a third party, creating an overlap in the legal descriptions for their respective deeds. *Id.*[1] Mansur offered to accept $105,000 in settlement, *id.*, and cited an attached opinion letter from a commercial real estate broker estimating the resulting loss in value to the Mansur Property at $89,840—resulting from $27,140 in appraised value of the overlap and $62,700 in "loss of value" due to "a reduction in the functionality" of the property, *id.* at 34.

First American responded to the Notice of Claim on March 18, 2021, accepting coverage under the Policy's "Covered Risk 1." *Id.* at 38–39. Covered Risk 1 "provides coverage against loss or damage, sustained, or incurred by the Insured by reason of Title being vested other than as stated in Schedule A." *Id.* at 39. As to Mansur's offer to settle the Claim for $105,000, First American explained its rights under the Policy:

> When the Company learns of a claim that is covered, Conditions 5 and 7 of the Policy provide that the Company has various choices under the Policy and *may choose one or more of those options*. The Company has elected to exercise its option to retain counsel to represent you in negotiating with the neighbor to resolve the potential overlap created by the various deeds.

*Id.* (emphasis in original). First American provided contact information for the attorney it had retained to represent Mansur, Katie Jo Johnson. *Id.* Ms. Johnson met with Mansur's member and manager, Fatima Magomadova, about the claim in April 2021. Dkt. No. 37-1 at 2. Over the following months, Ms. Johnson attempted to negotiate with the current and prior owners of the neighboring property without success. Dkt. No. 35 at 57–63, 76–78.

When the negotiations broke down, First American elected to exercise its option under Condition 7(b)(ii) of the Policy to pay the loss attributable to the property overlap:

---

[1] First American contends that Elvie Cass Pickett owned the neighboring property at the time a 1965 statutory warranty deed purported to transfer a portion of the Property to him. Dkt. No. 34 at 4 n.3. The January 2021 statutory warranty deed transferring the neighboring property from Mr. Pickett to the current owner, Farhart Property Management, LLC, did not contain the disputed portion of the Mansur Property in its legal description. *Id.*

[P]ursuant to Condition 7(b)(ii) and in accordance with Condition 8(a)(ii), the Company will engage the services of a professional appraiser to conduct a diminution of value appraisal accounting for the difference between value of a fee simple ownership interest in the Land as insured, versus the value of the Land less the Rectangular Area. [First American's Corporate Claims Analyst] will provide the contact information for the appraiser once [she has] confirmed their commission. After payment of the actual loss, Condition 7 provides that the Company's obligations to the Insured with respect to the claim end, including any liability or obligation to defend, prosecute, or continue any litigation.

*Id.* at 80. First American then engaged Richard P. Herman, MAI, FRICS, to conduct the diminution of value ("DIV") appraisal. *Id.* at 86–245. On January 24, 2022, First American informed Mansur of the engagement and provided Mr. Herman's contact information. *Id.* at 83–84.

Mr. Herman concluded that the DIV attributable to the legal description overlap was $23,700. *Id.* at 88.[2] On March 10, 2022, First American issued a check to Mansur for that amount, *id.* at 250, and sent Mansur's counsel a letter stating that "as previously outlined[,] after the payment of the actual loss reflected in the DIV appraisal, Condition 7 [of the Policy] provides that the Company's obligations to the Insured with respect to the claim end," *id.* at 247.

## C.   Mansur Files Suit

In June 2021, Mansur filed suit in Clark County Superior Court, alleging that First American "was negligent in [its] review of the chain of title for the Property," and that it "breached a duty to Plaintiff[] in providing an accurate legal description of the Property before it was purchased and when the statutory warranty deed was filed on September 23, 2020." Dkt. No. 1-1 at 3. First American removed the case, Dkt. No. 1, and filed a motion for summary judgment, Dkt. No. 13. Mansur then filed a motion for leave to file an amended complaint. Dkt. No. 18. The Court granted Mansur's motion to amend and denied as moot the motion for summary judgment. Dkt. No. 25 at 4.

---

[2] This amount "is attributable to a reduction in land area" and consequential damages "in the form of the need for parking space reorientation." *Id.* at 92.

Mansur's amended complaint, filed in October 2021, reasserted its negligence claim and added a breach of contract claim. Dkt. No. 26 at 3. The breach of contract claim alleges that First American "elected to utilize Conditions 5 and 7 of [its] Owner's Policy of Title Insurance" so it was "obligated to ensure that the Insured's rights are not violated and that a timely resolution is pursued." *Id.* According to Mansur, First American breached this duty by "unreasonably delaying and failing to otherwise settle the matter" and "failing to provide a reasonably accurate title assessment." *Id.* First American moves for summary judgment on both claims. Dkt. No. 34.

## II.     DISCUSSION

### A.     Jurisdiction

First American contends that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a). Dkt. No. 1 at 2. Because First American is a Nebraska corporation with its principal place of business in California, *id.* at 3, and Mansur is an LLC with its member and manager located in Oregon,[3] the parties are diverse. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[L]ike a partnership, an LLC is a citizen of every state of which its owners/members are citizens.").

To determine whether the jurisdictional amount in controversy has been satisfied, courts may consider "facts presented in the removal petition as well as any summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam) (cleaned up). A defendant who removes a case "may point to many different types of evidence" to establish the amount in controversy, and "[a] particularly powerful form of evidence is the plaintiff's own statements about the damages they seek." *Flores v. Safeway, Inc.*, No. C19-0825-JCC, 2019 WL 4849488, at *3

---

[3] *See* https://sos.oregon.gov/business/Pages/find.aspx (last visited October 17, 2022).

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 5

(W.D. Wash. Oct. 1, 2019). Such statements can include settlement demands. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (per curiam); *see also Segar v. Allstate Fire & Cas. Ins. Co.*, No. C21-1526-JLR, 2022 WL 102035, at *3 (W.D. Wash. Jan. 11, 2022) ("The court treats [plaintiff's] pre-litigation demand as relevant evidence of the damages that he seeks—namely, the full $100,000 UIM policy limit.").

In this case, both versions of the complaint seek the "economic and non-economic damages sustained" by Mansur as well as attorney's fees and costs, but do not specify the amount of damages sought. Dkt. No. 1-1 at 3; Dkt. No. 26 at 4. Mansur's January 2021 notice of claim letter to First American offered to settle the matter for $105,000, asserting that its "loss in property value and expenses incurred" exceeded $89,840. Dkt. No. 35 at 27. Mansur's settlement demand "appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn*, 281 F.3d at 840. Therefore, it is evident that the amount in controversy is more than $75,000.

Because the parties are diverse and the amount in controversy requirement is met, this Court has jurisdiction over the claims based on 28 U.S.C. § 1332(a). In addition, First American timely removed this matter on July 8, 2021, within 30 days of service of the summons and complaint on June 10, 2021. Dkt. No. 1 at 4; *see* 28 U.S.C. § 1446(b)(1).

**B.    Summary Judgment Standard**

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. And to the extent that the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where

the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The Court will, however, enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has carried its burden under Rule 56(c), "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). Metaphysical doubt is insufficient, *id.* at 586, as are conclusory, non-specific allegations, *Lujan*, 497 U.S. at 888–89.

## C.   Mansur's Negligence Claim

First American argues that Mansur's negligence claim should be dismissed because under the independent duty doctrine, Mansur's injury must arise from a breach of a duty independent of the parties' contract, and Mansur has not identified any such duty. Dkt. No. 34 at 9. It further contends that it did not owe Mansur a duty to search for and disclose potential title defects. *Id.* at 7. Mansur counters that First American had a duty to defend and protect its insured "at its own cost and without unreasonable delay," and that under Washington law, First American "may be negligent" for failing to settle a claim against the insured within its policy limits or for failing to meet the "reasonably prudent man" standard. Dkt. No. 37 at 5 (internal quotation marks and brackets omitted). As explained below, First American had no duty to search for and disclose title defects, and Mansur cannot assert its other negligence theories for the first time in response to the motion for summary judgment.

1.   <u>First American Had No Duty to Search for and Disclose Potential Title Defects</u>

To establish its negligence claim, Mansur must prove the traditional tort elements of duty,

breach, and damages proximately caused by the breach. *See, e.g., Gamble v. State Farm Mut. Auto. Ins. Co.*, No. C19-5956-RJB, 2020 WL 6286816, at *3 (W.D. Wash. Oct. 27, 2020). An insured cannot simply rely on duties created by its insurance contract to establish a duty for purposes of a tort claim. Rather, under the independent duty doctrine, "[a]n injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." *Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1262 (Wash. 2010). The "existence of a duty is a question of law," and "[w]hen no independent tort duty exists, tort does not provide a remedy." *Id.* (cleaned up).

Mansur contends that First American "was negligent in [its] review of the chain of title for the Property" and in failing to provide "an accurate legal description of the Property before it was purchased and when the statutory warranty deed was filed on September 23, 2020." Dkt. No. 26 at 3. But Mansur has not shown that First American had a duty to search for and disclose potential title defects. First American argues—and Mansur does not dispute—that Chapter 48.29 of the Revised Code of Washington, which governs the duties of title insurers, does not impose a duty to perform those functions. Dkt. No. 34 at 7–9; *see generally* Wash. Rev. Code § 48.29 *et seq.*

Critical here is the nature of what First American provided to Mansur, because Mansur misapprehends the distinctions between a title policy, an abstract of title, and a preliminary report, binder or commitment. As the Washington Supreme Court noted in an en banc opinion thoroughly analyzing the duty of a title insurer to its insureds, the legislature has amended the definitions section of Chapter 48.26 to clarify the duties associated with these deliverables. *Barstad v. Stewart Title Guar. Co., Inc.*, 39 P.3d 984, 988 (Wash. 2002).[4] A preliminary report or "commitment"

---

[4] The 1997 amendment to Section 48.29.010 of the Revised Code of Washington "resolve[d] the obligations associated with a preliminary commitment and an abstract of title," and did so in favor of the position of title insurers, who had "roundly den[ied] they have the abstracter's duty," and "argue[d] that the preliminary commitment merely discloses what the policy will and will not cover, that their only legal obligation is to pay losses under the policy, and that an insured has no reasonable expectation of anything more." *Barstad,* 39 P.3d at 988, 990 (cleaned up).

furnished in an application for title insurance like the one First American issued to Mansur here, Dkt. No. 35 at 5–15, is an offer to "issue a title policy," Wash. Rev. Code § 48.29.010(3)(f). Such reports or commitments "are not abstracts of title, nor are any of the rights, duties, or responsibilities applicable to the preparation and issuance of an abstract of title applicable to the issuance of any report." *Id.* Furthermore, they are "not a representation as to the condition of the title to real property, but [rather] a statement of terms and conditions upon which the issuer is willing to issue its title policy, if the offer is accepted." *Id.* In contrast, an "abstract of title"— which was not provided by First American to Mansur—*is* a representation "intended to be relied upon by the person who has contracted for the receipt of th[e] representation," as it "list[s] all recorded conveyances, instruments, or documents that, under the laws of the state of Washington, impart constructive notice with respect to the chain of title to the real property described." *Id.* § 48.29.010(3)(a); *see also Assocs. Hous. Fin. L.L.C. v. Stredwick*, 83 P.3d 1032, 1037 (Wash. Ct. App. 2004) (because it is "merely an offer to issue title insurance," a "preliminary commitment is a different breed of animal than an abstract of title."). An abstract of title is expressly "not a title policy" under the statutory definition. Wash. Rev. Code § § 48.29.010(3)(a); *see also id.* § 48.29.010(3)(j) (a "title policy" is "any written instrument, contract, or guarantee by means of which title insurance liability is assumed.").

Consistent with these definitions, the Washington Supreme Court has held that title insurance companies "have no general duty to disclose potential or known title defects when they are not preparing an abstract of title because these services are not prepared for or intended to be relied on by a person other than the insurer." *Centurion Props. III, LLC v. Chi. Title Ins. Co.*, 375 P.3d 651, 656 (Wash. 2016) (in "a long line of cases," "we have rejected attempts to impose a duty on title insurance companies to search for and disclose title defects."); *see also Dave Robbins Const., LLC v. First Am. Title Co.*, 249 P.3d 625, 627 (Wash. Ct. App. 2010) ("In other words, the

purpose of First American's investigation was to determine the scope of the title policy it would issue to [its prospective insured]; as a matter of law, First American owed no duty of disclosure to [the insured.]"). Also consistent with the statutory definitions is the Notice in the Commitment that First American issued to Mansur, which explicitly stated that it was not an abstract of title "or other representation of the status of title." Dkt. No. 35 at 12. Mansur has cited nothing to contradict that authority or to support a duty to search for and disclose title defects. In the absence of such a duty, Mansur has failed to establish its negligence claim.

2.     Mansur Cannot Allege a New Claim in Response to a Summary Judgment Motion

In its response to First American's motion, Mansur contends that "[e]ven if First American owes no independent duty in tort to Plaintiff to search for and disclose potential title defects," it is nonetheless liable for negligence because it unreasonably delayed its resolution of the matter. Dkt. No. 37 at 6–7. However, Mansur did not allege that negligence theory in its original or amended complaints. Dkt. Nos. 1-1, 26. Instead, it contended that First American's alleged delay constituted a breach of contract. Dkt. No. 26 at 3. Nor did Mansur allege its new negligence theory in its discovery responses, even though First American's interrogatories explicitly asked whether Mansur was asserting claims other than the breach of contract claims addressed by the prior interrogatories. Dkt. No. 35 at 275 (responding "not at this time").

A party cannot assert a new theory of liability—effectively amending its complaint—in response to a motion for summary judgment. *See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) ("[The plaintiff] may not effectively amend its Complaint by raising a new theory . . . in its response to a motion for summary judgment."); *Oyarzo v. Turner*, 641 F. App'x 700, 702 (9th Cir. 2015) (district court did not err in refusing to consider a claim belatedly raised in response to a motion for summary judgment); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000) (a plaintiff "cannot

turn around and surprise the [defendant] at the summary judgment stage" with a new theory of liability). Allowing a plaintiff to assert a new theory of liability in response to a summary judgment motion is particularly disfavored where it "would prejudice the defendant who faces different burdens and defenses under this second theory of liability." *Coleman*, 232 F.3d at 1292. That is the case here. While negligence and breach of contract claims both include elements of duty, breach, and causation, the evidence required to satisfy each element varies significantly between the two claims. *See, e.g.*, *Eastwood*, 241 P.3d at 1262. Specifically, to determine the existence of a contractual duty and breach thereof, the Court focuses on the contract's language and considers extrinsic evidence, where necessary, to determine the meaning of specific words and terms used. *See Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). But to demonstrate negligence, an insured must show that its insurer failed to use ordinary care or to meet the "reasonably prudent man test"—standards that arise from tort principles, not contractual obligations. *See, e.g., Garrison v. Allstate Ins. Co.*, C21-00624-DGE, 2022 WL 2905881, at *3 (W.D. Wash. July 22, 2022).

The prejudice is heightened here because the deadlines to conduct discovery and file dispositive motions have passed. *See* Dkt. No. 29; *Coleman*, 232 F.3d at 1292; *Smith v. City & Cnty. of Honolulu*, 887 F.3d 944, 951–52 (9th Cir. 2018) ("A defendant suffers prejudice if a plaintiff is allowed to proceed with a new theory of recovery after close of discovery."). Therefore, First American would be prejudiced if it were required to defend against a new theory of liability— with different standards—at this late stage in the proceedings and without the ability to conduct discovery regarding the new theory. Accordingly, the Court does not further consider Mansur's newly-asserted theory of negligence and concludes that First American is entitled to summary judgment on Mansur's negligence claim.

**D.      Mansur's Breach of Contract Claim**

Mansur argues that First American breached the contract by "failing to provide a reasonably accurate title assessment[,]" "unreasonably delaying and failing to otherwise settle the matter[,]" Dkt. No. 26 at 3, and paying Mansur only a fraction of its alleged damages, Dkt. No. 37 at 4. First American counters that it owed no duty to search for or disclose potential title defects, and instead fully performed under the Policy by paying Mansur the diminution in value caused by the title defect. Dkt. No 38 at 1; *see also* Dkt. No. 34 at 9–15. With respect to Mansur's allegation that it breached the contract by unreasonably delaying and failing to settle, First American argues that it complied with all contractual requirements, accepted the claim, and paid it. Dkt. No. 34 at 11–13; *see also* Dkt. No 38 at 5–7. It also asks the Court to strike Mansur's late-disclosed expert report, which Mansur submitted after the close of discovery to support its contention that First American underpaid the claim. Dkt. No. 38 at 2–3, 7–9.

1.      Legal Standard

Under Washington law, "[a] breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest. Mfrs. v. Dep't of Labor & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995); *see also* Dkt. No. 35 at 21 (designating governing law as "the law of the jurisdiction where the Land is located"). Courts interpret insurance policies by "consider[ing] the insurance policy as a whole, giving the policy a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Kut Suen Lui v. Essex Ins. Co.*, 375 P.3d 596, 599 (Wash. 2016) (cleaned up). In disputes over coverage, "[t]he burden first falls on the insured to show its loss is within the scope of the policy's insured losses," and if the insured satisfies that burden, "the insurer can nevertheless avoid liability by showing the loss is excluded by specific policy language." *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002) (internal citation omitted).

2.     Alleged Breach by Failing to Provide an Accurate Title Assessment

Mansur's response does not address First American's argument that its contractual obligation was to indemnify Mansur against defects in the title—not to guarantee a clear title. *See generally* Dkt. No. 37. Nor does Mansur identify any provision in the Policy guaranteeing a clear title. As explained above, insurance companies have no general duty to disclose potential or known title defects when they are not preparing an abstract of title. Therefore, First American is entitled to summary judgment on Mansur's claim that it breached the contract by failing to provide an accurate title assessment.

3.     Alleged Breach of Condition 5

Mansur contends that First American breached Condition 5(a) of the Policy, which provides:

> Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured.

Dkt. No. 35 at 19. Mansur argues that First American breached the requirement to provide a defense "without unreasonable delay." Dkt. No. 26 at 3. However, because no "third party" has asserted a claim against Mansur, the provision is inapplicable. First American cannot be liable for failing to provide a defense in the absence of such a claim to defend. Because the provision is inapplicable, First American is not liable for its breach.

4.     Alleged Breach of Condition 7 and Settlement

Mansur also alleges that First American breached condition 7 of the Policy by "failing to otherwise settle the matter." Dkt. No. 37 at 6. But the Policy did not require First American to settle the disputed boundary issue with the other property owner. Instead, the Policy afforded First American options:

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance. To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay. . . .

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

> (i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

> (ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

> Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

Dkt. No. 35 at 20. Thus, according to the language of the Policy, First American had the option to settle the matter with the other property owner under condition 7(b)(i) or to pay Mansur's claim under condition 7(b)(ii). *Id.* Although Mansur might have preferred to settle with the other property owner, First American was not obligated to do so. Nor is there any evidence that the other property owner was willing to settle. First American had the option to pay the claim instead, which it did. *Id.* at 247, 250. Therefore, First American did not breach the Policy by failing to settle with the other property owner.

     5.    <u>Alleged Delay</u>

Mansur contends that the First American breached the insurance contract by failing to

pursue a timely settlement and otherwise "unreasonably delaying" resolution of its claim. Dkt. No. 37 at 6.[5] The Policy did not require First American to resolve Mansur's claim within a specified period of time. The absence of such a provision does not end the inquiry, though. Where, as here, a "contract imposes a definite obligation but fails to provide a time for its performance," the court may impose "a reasonable time for performance of an obligation." *Byrne v. Ackerlund*, 739 P.2d 1138, 1144 (Wash. 1987). "A reasonable time is to be determined by the nature of the contract, the positions of the parties, their intent, and the circumstances surrounding performance." *Pepper & Tanner, Inc. v. Kedo, Inc.*, 535 P.2d 857, 859 (Wash. Ct. App. 1975). "In some cases . . . the undisputed factual situation may be such that the court can say as a matter of law whether a certain thing was or was not done within a reasonable time." *Jarstad v. Tacoma Outdoor Recreation, Inc.*, 519 P.2d 278, 283 (Wash. Ct. App. 1974).

First American accepted Mansur's claim on March 18, 2021, within two months of receiving it on January 22, 2021. Dkt. No. 35 at 27, 38. And by that date, First American had retained an attorney at its own expense to represent Mansur to negotiate with the other property owner to resolve the potential property overlap. *Id.* at 39. That attorney met with Mansur approximately three weeks later, Dkt. No. 37-1 at 2, and spent the next several months sending letters and calling the current and former property owners to try to negotiate a settlement. *See* Dkt. No. 35 at 2, 57–64, 76–78. The owner initially expressed interest in resolving the matter, but then changed his mind. *Id.* at 76–77. On January 18, 2022, less than a week after First American learned of that change, it sent Mansur a letter explaining that it had elected to pay the claim. *Id.* at 80–81. First American promptly engaged Mr. Herman to conduct a diminution in value appraisal and informed Mansur of that development. *Id.* at 80. It then paid Mansur's claim on March 10, 2022.

---

[5] Mansur does not allege a claim of bad faith or violation of Washington's Insurance Fair Conduct Act ("IFCA") based on the alleged delay.

1   *Id.* at 247, 250. Those actions do not represent an unreasonable delay, and Mansur cites no

2   authority to the contrary. *See, e.g.*, *MidMountain Contractors, Inc. v. Am. Safety Indem. Co.*, 893

3   F. Supp. 2d 1096, 1110 (W.D. Wash. 2012) (denying insured's motion for summary judgment

4   based on finding that insurer's two-and-a-half month delay in offering to provide a defense did not

5   breach its duty to defend), *stricken in part on other grounds*, No. C10-1239-JLR, 2013 WL

6   5492952 (W.D. Wash. Oct. 1, 2013); *Nguyen v. Allstate Ins. Co.*, No. C11-610-JCC, 2012 WL

7   2367071, at *3 (W.D. Wash. June 20, 2012) (granting summary judgment in favor of insurer on

8   insured's delay-based breach of contract claim where payment was made approximately one year

9   after the original claim). Therefore, Mansur has not shown that First American breached the

10   contract by engaging in unreasonable delay.

11      6. <u>Alleged Failure to Pay Full Diminution in Value</u>

12      The parties agree that under the Policy, Mansur is entitled to recover the diminution in the

13   value of the Property caused by the title defect. Dkt. No. 37 at 8; Dkt. No. 38 at 7. Diminution in

14   value is an economic loss that is recoverable if covered by the applicable policy. *See, e.g.*,

15   *Homesite Ins. Co. v. Zajac*, 481 F. Supp. 3d 1198, 1202 n.4 (W.D. Wash. 2020). Here, the Policy

16   provides that "[t]he extent of liability of the Company for loss or damage under this policy shall

17   not exceed the lesser of (i) the Amount of Insurance; or (ii) the difference between the value of the

18   Title as insured and the value of the Title subject to the risk insured against by this policy." Dkt.

19   No. 35 at 20.

20      Mansur contends that First American breached the contract by paying "a fraction" of its

21   alleged damages to resolve the claim. Dkt. No. 37 at 1. It relies on a late-disclosed expert report to

22   support that claim, so the Court must first evaluate First American's request to strike that report to

23   determine the appropriate scope of the record for this motion.

24

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 16

*a.      Admissibility of the New Appraisal Opinion*

First American asks the Court to strike the Declaration of Matthew Call and his attached appraisal review, Dkt. No. 37-2, because Mansur did not timely disclose the opinion in discovery. Dkt. No. 38 at 2–3. Mansur is presenting Mr. Call's opinions as those of an expert. Dkt. No. 33 at 1.[6] He is a partner at Appraisal & Consulting Group, LLC, and he specializes in commercial, land, and condemnation appraisals. Dkt. No. 37-2 at 1. He and his colleague completed an appraisal review on the diminution in value appraisal report prepared by First American's expert, Richard Herman. *Id.* The appraisal review states that it "estimates the diminution in value from the loss of 1,165 SF of land area due to an incorrect legal description insured by First American[.]" *Id.* at 4. It specifically estimates the diminution in value at $112,000. *Id.* at 7.

Expert witness reports and disclosures were due by May 11, 2022. Dkt. No. 29; Fed. R. Civ. P. 26(a)(2)(B) (required elements of expert reports). Rebuttal reports were due on June 10, 2022—30 days after the other party's disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii). But Mansur did not disclose Mr. Call's appraisal review until August 22, 2022. Dkt. No. 39 at 1.

A party must disclose all expert reports "at the times and in the sequence that the court orders," and such disclosure "must be accompanied by a written report" if the expert has been retained to provide expert testimony in the case. Fed. R. Civ. P. 26(a)(2)(B), (D). Mr. Call's opinions would have been untimely even if considered a rebuttal report, but they are more properly characterized as an expert report. "[A] rebuttal witness may only provide evidence that contradicts or rebuts unforeseen evidence presented by the opposing party." *Holen v. Jozic*, No. C17-1147-JLR, 2018 WL 5761775, at *2 (W.D. Wash. Nov. 2, 2018); *see also id.* at *3 ("[I]n order to qualify

---

[6] On July 25, 2022, after the expert disclosure deadline had passed, Mansur responded to First American's interrogatories and listed Mr. Call as an expert it expected to call at trial. Dkt. No. 35 at 272, 277. That response was not accompanied by an expert report, and Mansur responded to another interrogatory by objecting to providing additional information about Mr. Call's opinions and citing Federal Rule of Civil Procedure 26(b)(4)(D), which applies to consulting—not testifying—experts. *Id.* at 272–73; Fed. R. Civ. P. 26(b)(4)(D).

as a rebuttal expert, the expert must provide evidence that contradicts or rebuts another party's expert on a subject matter that was unexpected or unanticipated at the time initial disclosures were due."); *Sousie v. Allstate Indem. Co.*, No. C17-5087-BHS, 2018 WL 1046828, at \*2 (W.D. Wash. Feb. 26, 2018) (finding that defendant improperly disclosed a witness as a rebuttal expert even though the need for his testimony should have been anticipated when it received plaintiff's complaint). Here, the alleged diminution in value has been central to this dispute from the case's inception. *See, e.g.*, Dkt. No. 1-1 at 3 (alleging that First American's provision of an inaccurate description of the property significantly lowered the value of the property). Therefore, Mansur should have disclosed Mr. Call's opinions and report by the May 11, 2022 deadline.

Where, as here, a party "fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) "gives teeth" to the requirements of Rule 26(a)(2)(B) and affords the district court "particularly wide latitude . . . to issue sanctions" for a party's failure to meet those requirements. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Thus, while "Rule 37(c)(1) is a self-executing, automatic sanction designed to provide a strong inducement for disclosure," *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (cleaned up), "the rule is automatic in the sense that a district court *may* properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless," *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (emphasis in original).

The Court considers four factors to determine whether violation of a discovery deadline is justified or harmless: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and

1    (4) bad faith or willfulness involved in not timely disclosing the evidence." *W. Towboat Co. v.*

2    *Vigor Marine, LLC*, No. C20-0416-RSM, 2021 WL 2156694, at *1 (W.D. Wash. May 27, 2021)

3    (citing *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010)).[7]

4        As to the first factor, the Court finds that First American suffered prejudice and surprise as

5    a result of the belated disclosure. Mansur provided Mr. Call's declaration and appraisal over three

6    months after the expert disclosure deadline, over a month after the close of discovery, and nearly

7    a month after First American filed its motion for summary judgment. Dkt. Nos. 29, 34, 39 at 1.

8    Because discovery had already closed, it was too late for First American to depose Mr. Call or his

9    colleague about their methodology and opinions. Other courts have found prejudice and surprise

10   under those circumstances, particularly where, as here, the trial date—December 12, 2022—is

11   quickly approaching. *See Duhamel v. Washington*, No. 2:20-cv-00337-RSM-BAT, 2021 WL

12   1531001, at *1 (W.D. Wash. Apr. 19, 2021) (finding prejudice because "discovery in this case is

13   now closed and dispositive motions have been filed"); *Torgerson v. Leavit*, No. C11-900-RAJ,

14   2013 WL 12066142, at *1 (W.D. Wash. May 29, 2013) ("[T]he Court finds that defendants' failure

15   is not harmless where the deadline for expert disclosure . . . has long passed, dispositive motions

16   have already been filed, and trial is set [for two months from date of order]."). Nor does Mansur

17   argue that its violation of the disclosure deadline was harmless, which is its burden to prove. *Yeti*,

18   259 F.3d at 1107; *accord Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir.

19   2005) (holding that if plaintiff was "permitted to disregard the deadline for identifying expert

20

21   [7] At least one other judge in this district has set forth the following five-part test for assessing the appropriateness of
     Rule 37's exclusionary sanction: (1) the public's interest in expeditious resolution of the litigation; (2) the court's need
22   to manage its docket; (3) the risk of prejudice to the non-offending party; (4) the public policy favoring disposition of
     cases on their merits; and (5) the availability of less drastic sanctions. *Smith v. Ardew Wood Prods., Ltd.*, No. C07-
     5641-RJB, 2009 WL 799679, at *3 (W.D. Wash. Mar. 24, 2009) (citing *Wander v. Johnston*, 910 F.2d 652, 656 (9th
23   Cir. 1990)). With respect to the fifth factor, Mansur has not argued for a less severe sanction. *See Merchant*, 993 F.3d
     at 741 (the party facing exclusion "bears the burden of showing that a sanction other than exclusion is better suited to
24   the circumstances," and "if the noncompliant party fails to move for lesser sanctions, the district court is not required
     to consider one").

witnesses, the rest of the schedule laid out by the court months in advance . . . would have to have been altered as well," and such "[d]isruption to the schedule of the court and other parties in that manner is not harmless"); *Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252-JCC, 2019 WL 1282014, at *1 (W.D. Wash. Mar. 20, 2019) ("The party seeking to avoid Rule 37's exclusionary sanction bears the burden of establishing harmlessness.").

Mansur fares no better with the second factor: it could not have cured or mitigated the prejudice stemming from the late disclosure without substantially disrupting the case schedule. It is unreasonable to expect First American to have tolerated Mansur's surprise expert report by seeking to reopen discovery after it had already filed a dispositive motion and the trial date was quickly approaching. And even if First American had moved to extend discovery and the Court had granted the motion, the ability to depose witnesses after the close of discovery does not negate the harm of missing the Court's disclosure deadlines. *See Koho v. Forest Laboratories, Inc.*, No. C05-667-RSL, 2015 WL 11201281, at *6 (W.D. Wash. Mar. 31, 2015) ("[A] goal of 26(a)(2) is to allow parties to prepare for expert depositions and to shorten or decrease the need for expert depositions."); *Ross v. Fred Meyer Stores, Inc.*, No. C09-5285-BHS, 2010 WL 2650524, at *3 (W.D. Wash. July 1, 2010) (because the purpose of the expert report disclosure requirement "is to minimize the amount of deposition time needed, and in many cases avoid the need for the expert deposition altogether," party's "failure to comply with the expert witness report requirement eviscerate[d] the purpose of the rule" and could not "be considered harmless").

With respect to the third factor, the Court finds that allowing the late disclosure would necessarily disrupt the trial date because First American would have to be afforded an opportunity to conduct additional discovery and file another dispositive motion. Those tasks—in addition to filing pretrial submissions and resolving another dispositive motion and pretrial motions—cannot realistically be accomplished before the current December 12, 2022 trial date. Therefore,

permitting the late report would delay the Court's pretrial schedule and, ultimately, the trial date. *See Wong*, 410 F.3d at 1062 (district court did not abuse its discretion in refusing to permit party to supplement his disclosure where such supplementation would have required altering the schedule set by the court; "[c]ourts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to.").

Turning to the fourth factor, the Court considers whether Mansur's violation of the expert report deadline was willful. *See R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012) (a district court must consider whether the party's noncompliance involved "willfulness, fault, or bad faith" when conducting a harmlessness inquiry under Rule 37(c)(1)). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath* v. *Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994). Here, Mansur fails to show that its noncompliance can fairly be attributed to a circumstance or conduct outside its control. Valuation has been central to the case since its inception, and Mansur received First American's expert report on March 30, 2022—months before the expert disclosure deadline. Dkt. No. 39 at 1. It offers no explanation for its untimely disclosure, and it has never moved to extend the disclosure deadline. *See* Fed. R. Civ P. 16(b)(4); LCR 7(j), 16(b)(6); *Yeti*, 259 F.3d at 1106 (district court did not abuse its discretion when it excluded defendants' expert after they failed to timely disclose the expert and failed to ask for an extension of the discovery deadline); *Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (district court did not abuse its discretion in excluding late expert report because the offending party never sought an extension of time).

Based on the above factors, the Court excludes Mr. Call's declaration and appraisal review report. Dkt. No. 37-2. It will not consider them for purposes of First American's motion for

1   summary judgment.

2          *b.*      *Diminution of Value*

3         Mansur contends that First American breached the Policy by paying it less than the full

4   diminution of value of the property. Dkt. No. 37 at 1. But First American paid Mansur's claim,

5   and it "cannot be liable for breach of contract on any diminished value claim where it has already

6   fully compensated for diminished value[.]" *Jenkins v. State Farm Mut. Auto. Ins. Co.*, No. C15-

7   5508-BHS, 2018 WL 526993, at *9 (W.D. Wash. Jan. 24, 2018). Mansur has the burden of

8   establishing its damages, *see, e.g.*, *Nw. Indep. Forest. Mfrs.*, 899 P.2d at 9, but it has offered no

9   admissible evidence to show that First American paid less than the full diminution of value for the

10  title defect. It argues that the declaration and appraisal review of Mr. Call support its position, but

11  as set forth above, those opinions are excluded as untimely.

12        During oral argument, Mansur contended for the first time that the broker's opinion letter

13  attached to its notice of claim, Dkt. No. 35 at 34, was sufficient to create an issue of fact regarding

14  the amount of the diminution of value. That argument is unavailing because Mansur did not

15  provide an expert report from the broker, and it therefore cannot rely on his expert opinion without

16  a proper disclosure as set forth above. Nor did Mansur disclose his opinions in discovery despite

17  First American's requests for such information. Instead, it objected to providing the broker's

18  opinions in response to an interrogatory, Dkt. No. 35 at 272–73, and it did not identify him in

19  response to an interrogatory requesting the identity of witnesses from whom Mansur obtained a

20  "writing of any sort . . . concerning any of the allegations, facts, or claims in this lawsuit," *id.* at

21  273. Nor did it disclose his opinion as a basis for its damages, *id.* at 275, or produce his opinion

22  despite being asked in a request for production to produce "all assessments, reports, or other

23  documents that provide an estimation for the loss of property value you allege you suffered as a

24  result of the overlapping property lines at issue in this case," *id.* at 276 (objecting and stating that

1    "responsive documents will be produced when acquired as such records are still in progress.").

2        Accordingly, Mansur has failed to carry its burden to show that First American paid less

3    than what was owed under the Policy.

4                          **III.    CONCLUSION**

5        For the foregoing reasons, the Court GRANTS First American's motion for summary

6    judgment. Dkt. No. 34.

7        Dated this 18th day of October, 2022.

8

9    _____
     Lauren King
10   United States District Judge